(89 Misc. Rep. 652)

## In re McCUSKER'S WILL.

(Surrogate's Court, New York County.   March, 1915.)

1. WILLS ⚙➡55, 166—TESTAMENTARY CAPACITY—UNDUE INFLUENCE—SUFFI-
    CIENCY OF EVIDENCE.

    Evidence, in a will contest, *held* to show that testatrix understood the
    scope and nature of her will and was legally competent and capable when
    she executed same; that the will expressed her free and voluntary act;
    and that its execution was not procured by undue influence.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161, 421–
    437; Dec. Dig. ⚙➡55, 166.]

2. WILLS ⚙➡50—TESTAMENTARY CAPACITY—WHAT CONSTITUTES.

    Where testatrix, at the time of making her will, was capable of ap-
    preciating the value of her property, could recollect her relatives and
    any possible claimants upon her bounty long enough to form a rational
    judgment relative thereto, and could appreciate the scope and bearing
    of all provisions of the will, she had testamentary capacity.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 96–100; Dec.
    Dig. ⚙➡50.]

Proceedings on the probate of the will of Mary V. McCusker, de-
ceased.   Probate decreed.

James F. Donnelly, of New York City (John T. Smith, of New York
City, of counsel), for proponent.

Henry Brann, Jr., of New York City, for contestant Agnes Mc-
Manus.

Frank M. Patterson, of New York City, for Bridget C. Dowling, as
general guardian of John W. Farley and Richard Farley.

James M. Tully, of New York City, for contestant Jane Jackson.

Sykes, McCole & Potter, of New York City, for contestant Leona
J. Kip.

Joseph Fennelly, of New York City, for contestant Mary I. Kier-
nan.

W. W. Irwin, of New York City, for other contestants.

Don R. Almy, of New York City, for all contestants.

Frank T. Fitzgerald, of New York City, special guardian.

James M. Donohue, of New York City, special guardian for Helen,
John, Elizabeth, William, and Mary Rooney.

Thomas J. L. McManus, of New York City, for Franklin Ryan.

COHALAN, S.   Mary V. McCusker died September 17, 1913, at the
age of 74 years.   Three months before her death she executed the
paper offered for probate herein as her last will and testament.   The
value of her estate is said to be about $100,000.   The will gives various
small legacies to several relatives, friends, and institutions, and the res-
idue, which may amount to about $80,000, is divided equally between
the testatrix's real estate agent, James J. Etchingham, and her attorney,
John A. Rooney, both of whom are named as executors.

[1] The contestants are second and more distant cousins.   After
explaining in the will why she left nothing to the McCusker relatives,
and after directing that nothing should go to the Ryan relatives be-

cause of the trouble they had caused her, the testatrix stated in the sixth clause of the will:

"My other relations, if any are alive, I have not seen or heard from in many years. They never manifested any interest in me nor called upon me in sickness or at any other time. They had no interest in me, nor I in them."

The testimony fully bears out this provision of the will.

The deceased had been a public school-teacher in New York City for about 45 years, until she was retired on a pension February 1, 1899. Her mother died in 1877. Her sister Sarah was an inmate of Bloomingdale Hospital, and died there November 11, 1904, of chronic melancholia. On June 7, 1898, after a few months' illness, the deceased was legally committed to St. Vincent's Retreat for the Insane at Harrison, N. Y. She went there voluntarily and was aware of her condition. At the time of her commitment, she was very much depressed and despondent and had hallucinations. She quickly improved, however, and was permitted to go home October 27, 1898. She was again at St. Vincent's Retreat as a voluntary patient from April 26, 1906, to September 26, 1906, and from June 11, 1912, to May 31, 1913. Several nurses of that institution testified to acts of the testatrix while she was at St. Vincent's, which they characterized as irrational. Most of the so-called irrational acts were only eccentricities. Whatever mental aberration they indicated was temporary in character. Dr. Brooks, who was the physician in charge of St. Vincent's Retreat, and who had attended the testatrix while she was an inmate there, was the contestants' expert on the question of testamentary capacity. He said that in his opinion Miss McCusker was insane in March, 1913, and was not competent to make a will June 9, 1913, although he admitted that she was sane in February, 1913, and that he had asked her to make a will at St. Vincent's at that time.

In 1901 the testatrix met James J. Etchingham, one of the executors and residuary legatees named in the paper propounded. Etchingham subsequently acted as her real estate agent, and up to about 1907 he collected and turned over to her the rents of her real property and transacted the business incident thereto under her direction. Her letters written during this period show that she was undoubtedly competent and capable in business matters. In 1908 the testatrix became involved in litigation with a Margaret V. Ryan, with whom she had lived a year or two before. Etchingham recommended Rooney to Miss McCusker, and he acted as her attorney in the action against Mrs. Ryan. Rooney conducted the action successfully and secured from Mrs. Ryan restitution of the houses and other property that Miss McCusker claimed had been taken from her. During the pendency of the Ryan-McCusker litigation, Rooney visited the testatrix weekly. The Ryan litigation seems to have been her chief interest and her main topic of conversation during the last five years of her life. After the termination of the suit, she gave Rooney full power of attorney to look after her financial affairs. Thereafter he was accustomed to draw checks and attend to various other details which the testatrix had formerly attended to personally.

The will was prepared by another lawyer, an acquaintance of

Rooney. The draftsman was given full and explicit instructions by the testatrix herself on the evening of June 6, 1913, at No. 210 East Forty-Ninth street. An appointment was made for June 9, 1913, and Miss McCusker's attending physician was asked to be there to witness the will. On the evening of June 9, 1913, the will was executed. All the necessary formalities were complied with. The witnesses were the draftsman (an attorney) and the physician. The draftsman talked with Miss McCusker about various matters for about an hour, while they waited for the arrival of the physician. The testimony of the subscribing witnesses leaves no doubt in my mind as to her competency at the time. Her physician had been attending her for nine days, and he testified that during that time she was able to walk about with assistance, and that at the time she executed the will she was of sound and disposing mind and memory.

The testatrix died three months after the will was executed. She was stricken with cerebral apoplexy in August, 1913, and died about a month later. During the last four or five years of her life the testatrix had been in ill health, caused generally by the decline accompanying "old age." She suffered from arterio sclerosis, Bright's disease, and muscular weakness of the heart. These ailments had been slowly progressing for several years.

The paper propounded is substantially the same as the will. executed by Miss McCusker August 28, 1909, four years before her death, and only a year or two after she had met Rooney. A codicil was executed in November, 1910, which made some minor changes in the will of 1909 and confirmed the provisions of that will giving the residuary estate to Rooney and Etchingham.

[2] The testatrix had a right to will her property as she desired. If, at the time of executing the will, she was capable of appreciating the value of her property and could recollect her relatives and any possible claimants upon her bounty for a sufficient length of time to enable her to form a rational judgment concerning those elements, and if she could appreciate the scope and bearing of all the provisions of her will, she had testamentary capacity. I am of opinion that the testatrix understood the scope and nature of her will and was legally competent and capable when she executed it. I am also of opinion that the paper propounded expresses her free and voluntary act, and that she was not the subject of undue influence in the execution thereof.

The paper propounded is entitled to probate as the last will and testament of the deceased.

Probate decreed.